CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    leif.dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 21-CR-312 YGR |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| JOSHUA HERNANDEZ, aka "SLEEPY G", | |
| Defendant. | |

## I. INTRODUCTION

The government submits this memorandum in advance of the sentencing of defendant Joshua Hernandez. Hernandez has pled guilty to one count of Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d) based on his agreement to commit at least two acts of racketeering activity in the conduct of the affairs of the San Jose Grande Enterprise. The parties have entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B). Pursuant to that agreement, the government joins Probation in respectfully requesting that the Court impose a sentence of 84 months, to be followed by three years of supervised release.

## II. FACTUAL BACKGROUND

### A. Procedural History

On August 12, 2021, a grand jury returned a one-count indictment charging six defendants with Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d). As alleged in the indictment, the charge relates to the defendants' participation in the Norteño street gang known as San Jose Grande ("SJG"), and a pattern of racketeering activity that includes drug trafficking, robbery, and attempted murder. Indictment ¶ 13(a)–(c).

Three of the six named defendants (Andrew Anchondo, Eliseo Martinez, and Nicholas Mendez) were already serving sentences in federal or state prisons at the time the arrest warrants were executed in this case. The other three defendants were arrested in September 2021, including Charles Pineda, aka "Taco," Giovanni Coria, aka "Gio," and Hernandez. Shortly after his arraignment in this case, Hernandez absconded from pretrial supervision. He was not located until January 2024; he has been in custody ever since. Presentence Report ("PSR") at ¶ 4.

### B. Offense Conduct & Other Relevant Conduct

#### 1. Background on San Jose Grande

San Jose Grande is a street gang that is affiliated with the Norteños and subordinate to La Nuestra Familia, the notorious prison gang. Within the ranks of Norteño street gangs, the commission of violence is often the quickest way to earn promotion or prestige. This is the case with San Jose Grande as well. Their violence is often directed against rival gang members, especially their rival Sureños, but sometimes includes fellow gang members who are believed to have violated the rules of the

gang. A member who commits a minor rule violation could be subject to discipline, such as a minor fine or physical assault. A member who commits a major rule violation, such as dropping out of the gang or cooperating with law enforcement, is often subject to a harsher penalty, including death. Outside of violence, Norteños earn promotion and prestige through the commission of criminal activities benefitting the gang and/or by serving time in jail or prison. Indeed, as this Court well knows based on the five other pleas it has taken in this case, the SJG enterprise, among other criminal activities, is heavily involved in narcotics trafficking.

SJG does not have a strict territory or boundary, however, the gang is known to operate primarily in the north side of San Jose, as well as portions of the greater Santa Clara County. SJG members identify themselves with the letter "G" (for "Grande"), the number "7" which represents the seventh letter of the alphabet ("G"), and "754" which represents the letters "SJG" on a numeric keypad. Like all Norteño gangs, SJG pays allegiance to, and often serves as foot soldiers (also known as "soldados") for the NF. As such, SJG members commit a wide variety of crimes for the benefit of SJG, as well as for the benefit of Norteños and the NF generally. These crimes include, but are not limited to, acts involving murder, extortion, robbery, kidnapping, obstruction of justice, witness intimidation, distribution of narcotics, and various firearms offenses.

### 2. Hernandez's Offense Conduct and Role in SJG

Hernandez admits that he has been a member of San Jose Grande since at least 2015. Plea Agreement ¶ 2(d); PSR at ¶ 11. Based on the evidence in this case, Hernandez was a senior member of the gang and "shot caller," who had authority to sanction violence within the group.

For example, in December 2017, a Norteño-affiliated inmate at the Elmwood Correctional Facility in Milpitas was attacked by two other inmates, including fellow Norteño Luis Garcia. Law enforcement suspected that the victim was attacked because he had spoken openly about a murder that had occurred a couple years earlier. In the attack, the victim suffered a cheekbone fracture and concussion.

A week after the attack, a "kite" or prison note, signed by Luis Garcia, was found in the pocket of another known Norteño at Elmwood. The kite (included below), which was addressed to the "AIC" or "Authority in Charge" of La Nuestra Familia at Elmwood, indicated that Hernandez had authorized

the assault. Specifically, Garcia wrote that "Sleepy G" had sanctioned the "removal" and that Garcia was supposed to "stay on" the victim until prison guards brought the "K9s" to stop it.

> MY NAME IS LUIS DANIEL GARCIA AKA YOUNG BABY I WAS ON THE FARM WHEN POSTE D/MORGAN HILL TOLD ME AND TITO
>
> THAT WHERE BEING CHOOSEN TO DO A REMOVAL ON JUAN PEREL AKA SP. I DIDNT ASK WHY I JUST SAID YES SIR ALSO REPO
>
> AND SLEEPY G SAINCTIONS SO IT. IT WAS NO WEAPON RUN AT LEAST WE DIDNT HAVE ONE WE WHERE TOLD WHEN
>
> WHISLE MAKES HIS MOVE TO STAY ON HIM UNTIL K-9 APPROACH SO I DID

Hernandez did not just order violence to enforce the rules of the gang, he carried out violence himself. Specifically, in June 2016, Hernandez tried to kill a fellow gang member by stabbing him multiple times. Plea Agreement ¶ 2(h); PSR at ¶¶ 15-21. The conflict with this former member ("Victim-1") began in August 2013, when another San Jose Grande member was shot and killed. It was rumored among SJG members that, as this member lay dead, Victim-1 rode up to the body on his bicycle and checked his pockets, presumably for money or drugs. The SJG members took this as a sign of disrespect to a fallen member. The conflict between Victim-1 and fellow SJG members escalated until, on or about June 18, 2016, he was approached by three individuals—including Hernandez—and stabbed multiple times. PSR at ¶ 21.

Hernandez also engaged in multiple robberies in connection with his role in SJG. As set forth in his plea agreement, sometime between 2015 and 2016, Hernandez learned about items of value located at an apartment in Campbell, California. Plea Agreement ¶ 2(f); PSR at ¶¶ 13-14. Hernandez scoped out the apartment with several co-conspirators, and then entered and, with his co-conspirators, obtained

from the resident of the apartment the combination to a safe. He stole approximately $14,000 in cash, marijuana, cocaine, some phones, and watches. PSR at ¶ 14.

Additionally, on or about October 26, 2019, Hernandez was involved in a home invasion robbery of a "dope house." Plea Agreement ¶ 2(g); PSR at ¶ 22. During this robbery, Hernandez went to the residence and posed as a customer who wanted to buy "powder." The individuals who lived there let him in, and Hernandez then took off with two ounces of cocaine. The residents of the stash house fired shots at Hernandez and his co-conspirator as they ran from the house (Hernandez's co-conspirator was shot in the right thigh and had a bullet fragment removed from that area).

### III.  HERNANDEZ'S CRIMINAL HISTORY

Over the past two decades, Hernandez has accumulated at least 8 felony convictions, including convictions for a 2007 conviction for assault with a deadly weapon, for which he was sentenced to two years in prison; a 2013 conviction for spousal abuse, for which he was sentenced to nearly a year in jail; and two convictions for felon in possession of a firearm or ammunition in 2014 and 2018. The government agrees with Probation's calculation that Hernandez falls in the highest Criminal History Category VI. PSR ¶ 68.

Probation calculates Hernandez's Total Offense Level as 27, which accounts both for Count Grouping based on the various racketeering activities encompassed by the RICO Conspiracy count, as well as an obstruction of justice enhancement for his flight from pretrial supervision. PSR at ¶ 54. This results in an advisory Guidelines range of 130-162 months. The government does not disagree with Probation's methodology or calculation of the Total Offense Level, but it notes that the government and defense contemplated a lower offense level in the Plea Agreement (TOL 22), which would yield an advisory Guidelines range of 84-105 months. *See* ECF No. 201 at ¶ 7(e). Thus, to honor its commitment under the Plea Agreement to argue for a Guidelines sentence based on the parties' agreed-upon Total Offense Level, *id*. at ¶ 14, the government argues for a downward variance from the Guidelines range proposed by Probation.

### IV.  GOVERNMENT'S SENTENCING RECOMMENDATION

Considering the sentencing factors set forth in Title 18, United States Code, Section 3553(a), the government submits that a 84-month sentence for Hernandez is sufficient, but not greater than

U.S. SENTENCING MEMORANDUM
21-CR-312 YGR
5

necessary, to comply with the purposes set forth in Section 3553(a), paragraph (2).  The government believes a substantial custodial sentence is warranted for Hernandez due to his significant and violent role in a dangerous street gang, his extensive criminal history, his flight during this prosecution, and the failure of prior state prosecutions and shorter custodial sentences to deter his criminal conduct.

To begin, Hernandez's offenses were extremely serious.  He inflicted significant violence on another SJG member for a perceived violation of the gang's rules, stabbing him multiple times to send a message to other gang members.  He also engaged in multiple robberies involving the theft of drugs and money, one of which resulted in the residents of the stash house shooting at Hernandez and his co-conspirators from the porch, hitting Hernandez's co-conspirator.  Such crimes often result in this type of dangerous reaction, which holds our communities hostage to such criminal activities because of the peril involved in simply stepping onto the street.  The crimes at issue are no doubt serious and deserving of a custodial term to reflect their seriousness, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to similar criminal conduct being contemplated by others.  18 U.S.C. § 3553(a)(2).  This is particularly true given Hernandez's criminal history, which shows a pattern of him participating in these sorts of criminal activities, as well as his response to the charges in this case, which prompted him to flee.

That said, the government's joint recommendation with Probation amounts to a downward variance from the applicable Guidelines range, which reflects: (1) Hernandez's acceptance of responsibility soon after returning to custody in 2024; (2) his programming while at Santa Rita (PSR at ¶ 97); (3) the traumatic events he apparently suffered in his childhood and throughout his drug addiction; and (4) an apparent attempt on his life while incarcerated (PSR at ¶ 82).  Importantly, the government's recommendation of 84 months would appropriately place Hernandez atop the sentences received by defendants in the SJG case, including above the 70-month sentence that codefendant Giovanni Coria received for primarily drug trafficking conduct.  Not only was Hernandez a senior member of the gang, but he engaged in a stabbing and two robberies, conduct far more serious than that engaged in by younger gang member Coria, who trafficked in drugs and guns, but did not personally engage in any violent acts.  At a minimum, a sentence of at least 70 months for Hernandez is required to avoid unwarranted disparities between him and similarly-situated Coria.  § 3553(a)(6).

## V. CONCLUSION

For the reasons set forth above, the government requests that the defendant be sentenced to 84 months of imprisonment, to be followed by three years of supervised release.

DATED: July 31, 2025                                      Respectfully submitted,

                                                          CRAIG H. MISSAKIAN
                                                          United States Attorney


                                                          _____/s/_____
                                                          LEIF DAUTCH
                                                          Assistant United States Attorney